E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, & Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2274
    Facsimile:  (213) 894-0142
    E-mail:     benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>                v.<br><br>JESUS PEREZ ALVEAR,<br>  aka "Chucho,"<br><br>           Defendant. | No. 2:22-cr-267-MEMF-4<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JESUS PEREZ ALVEAR |

     1.   This constitutes the plea agreement between JESUS PEREZ
ALVEAR ("defendant") and the United States Attorney's Office for the
Central District of California (the "USAO") in the above-captioned
case.  This agreement is limited to the USAO and cannot bind any
other federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authority.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

1          a.   At the earliest opportunity requested by the USAO and

2 provided by the Court, appear and plead guilty to count one of the

3 indictment in <u>United States v. Del Entertainment, Inc., et al.</u>, CR

4 No. 2:22-267-MEMF, which charges defendant with Conspiracy to

5 Transact in Property of Specially Designated Narcotics Traffickers in

6 violation of 21 U.S.C. § 1904(c)(2).

7          b.   Agree that all court appearances, including his change

8 of plea hearing and sentencing hearing, may proceed by video-

9 teleconference ("VTC") or telephone, if VTC is not reasonably

10 available, so long as such appearances are duly authorized by the

11 Court.  Defendant understands that, under the Constitution, the

12 United States Code, the Federal Rules of Criminal Procedure

13 (including Rules 11, 32, and 43), he may have the right to be

14 physically present at these hearings.  Defendant understands that

15 right and, after consulting with counsel, voluntarily agrees to waive

16 it and to proceed remotely.  Defense counsel also joins in this

17 consent, agreement, and waiver.

18          c.   Not contest facts agreed to in this agreement.

19          d.   Abide by all agreements regarding sentencing contained

20 in this agreement.

21          e.   Appear for all court appearances, surrender as ordered

22 for service of sentence, obey all conditions of any bond, and obey

23 any other ongoing court order in this matter.

24          f.   Not commit any crime; however, offenses that would be

25 excluded for sentencing purposes under United States Sentencing

26 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

27 within the scope of this agreement.

28

1      g.   Be truthful at all times with the United States

2   Probation and Pretrial Services Office and the Court.

3      h.   Pay the applicable special assessment at or before the

4   time of sentencing unless defendant has demonstrated a lack of

5   ability to pay such assessment.

6   THE USAO'S OBLIGATIONS

7     3.   The USAO agrees to:

8      a.   Not contest facts agreed to in this agreement.

9      b.   Abide by all agreements regarding sentencing contained

10  in this agreement.

11     c.   At the time of sentencing, provided that defendant

12  demonstrates an acceptance of responsibility for the offense up to

13  and including the time of sentencing, recommend a two-level reduction

14  in the applicable Sentencing Guidelines offense level, pursuant to

15  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

16  additional one-level reduction if available under that section.

17     d.   At the time of sentencing, recommend that defendant

18  receive a three-level downward variance.

19  NATURE OF THE OFFENSE

20    4.   Defendant understands that for defendant to be guilty of

21  the crime charged in count one, that is, Conspiracy to Transact in

22  Property of Specially Designated Narcotics Traffickers in violation

23  of 21 U.S.C. § 1904(c)(2), the following must be true:  (1) There was

24  an agreement between two or more persons to transact in property of a

25  specially designated narcotics trafficker or to willfully engage in a

26  transaction or dealing that evades or avoids, or has the effect of

27  evading or avoiding, the provisions of the Kingpin Act, 21 U.S.C. §

28

3

1901 et seq., and (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.[1]

## PENALTIES

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. § 1904(c)(2), pursuant to 21 U.S.C. § 1906(a)(1)[2], is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

---

[1] 21 U.S.C. § 1904(c)(1) prohibits any transaction or dealing by a United States person, or within the United States, in property or interests in property of any foreign person designated by the Secretary of the Treasury pursuant to 21 U.S.C. § 1904(b).  21 U.S.C. § 1904(c)(2) prohibits any transaction or dealing by a United States person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, or any endeavor, attempt, or conspiracy to violate, any of the prohibitions contained in the Kingpin Act.

[2] The parties agree that defendant is not subject to the heightened criminal penalties applicable to officers/directors/agents as set forth in 21 U.S.C. § 1906(a)(2).

7.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty

1  regardless of any immigration consequences that his plea may entail,

2  even if the consequence is automatic removal from the United States.

3  <u>FACTUAL BASIS</u>

4      9.    Defendant admits that defendant is, in fact, guilty of the

5  offense to which defendant is agreeing to plead guilty.  Defendant

6  and the USAO agree to the statement of facts provided below and agree

7  that this statement of facts is sufficient to support a pleaof guilty

8  to the charge described in this agreement and to establish the

9  Sentencing Guidelines factors set forth in paragraph 11 below but is

10  not meant to be a complete recitation of all facts relevant to the

11  underlying criminal conduct or all facts known to either party that

12  relate to that conduct.

13      At all relevant times, the Foreign Narcotics Kingpin

14  Designation Act (the "Kingpin Act"), 21 U.S.C. §§ 1901 <u>et seq.</u>, and

15  31 C.F.R. Parts 501 and 598, provided that the United States

16  Department of the Treasury, Office of Foreign Assets Control ("OFAC")

17  could designate persons and entities as "specially designated

18  narcotics traffickers" ("SDNTKs") subject to economic sanctions.

19  United States persons are generally prohibited from using,

20  transferring, or dealing in any property, including funds, in which

21  an SDNTK has an interest without authorization from OFAC.

22      On April 6, 2018, pursuant to the Kingpin Act, OFAC identified

23  and designated defendant and entity Gallistica Diamante, aka "Ticket

24  Premier," which defendant controlled, as SDNTKs.  From April 6, 2018

25  to the present, co-defendants DEL ENTERTAINMENT, INC. ("DEL

26  ENTERTAINMENT"), JOSE ANGEL DEL VILLAR ("DEL VILLAR", and LUCA

27  SCALISI ("SCALISI") were United States persons, as defined in the

28  Kingpin Act, who did not have authorization from OFAC to conduct

1  transactions with defendant or with Gallistica Diamante following

2  defendant's and Gallistica Diamante's designations as SDNTKs.

3       Prior to defendant's designation as an SDNTK by OFAC, defendant

4  had served as the Mexican representative of various artists

5  represented by DEL ENTERTAINMENT, including Artist A, for concerts

6  those artists performed in Mexico.  After defendant and Gallistica

7  Diamante were designated SDNTKs by OFAC and defendant and DEL VILLAR

8  were made aware of that designation, defendant and DEL VILLAR

9  continued to engage in transactions in which defendant and DEL

10  VILLAR/DEL ENTERTAINMENT had financial interests by arranging for

11  Artist A and other artists represented by DEL ENTERTAINMENT to

12  perform in concerts in Mexico, and to facilitate payment for those

13  concerts.

14       In furtherance of the conspiracy and to accomplish its objects,

15  on or about the following dates, defendant, DEL ENTERTAINMENT, DEL

16  VILLAR, SCALISI, and others, committed various overt acts in Los

17  Angeles County, within the Central District of California, and

18  elsewhere, including, but not limited to, the following:

19       Following defendant's designation as a SDNTK on April 6, 2018,

20  defendant and DEL VILLAR discussed the fact that defendant had been

21  designated a SDNTK by OFAC and further discussed how that designation

22  might affect future business dealings, including an upcoming concert

23  scheduled to occur in Aguascalientes, Mexico.  The Aguascalientes

24  concert was scheduled for April 27, 2018 and had been scheduled prior

25  to defendant's OFAC designation.  DEL VILLAR initially did not

26  communicate directly with defendant following defendant's OFAC

27  designation, but shortly before the scheduled Aguascalientes concert,

28  it became apparent that Artist A might not perform at the concert in

Aguascalientes because Artist A had expressed concerns due to defendant's OFAC designation.  Thereafter, defendant informed an associate of DEL VILLAR that defendant wanted to speak with DEL VILLAR directly.  Defendant was instructed by DEL VILLAR's associate to purchase a burner phone with which to communicate with DEL VILLAR about the Aguascalientes concert.  Defendant then obtained a burner phone and used it to communicate with DEL VILLAR in order to facilitate the Aguascalientes concert.  Following the Aguascalientes concert, DEL VILLAR's associate told defendant's associate that DEL VILLAR wanted defendant to discard the burner phone.

After discussions between defendant and DEL VILLAR, DEL VILLAR agreed to front payment for a private chartered flight to ensure Artist A would perform at the scheduled concert in Aguascalientes. DEL VILLAR insisted that defendant ensure that the airport in Aguascalientes would remain open to receive the private chartered flight after hours.  DEL VILLAR also insisted that defendant obtain a letter from the local government in Aguascalientes stating that the April 27, 2018 concert was being performed at the invitation of the City of Aguascalientes, which DEL VILLAR informed defendant was for the purpose of making it appear that defendant was not affiliated with the concert, even though DEL VILLAR knew that defendant remained a promoter and a financial beneficiary of the concert.  Defendant helped obtain the letter DEL VILLAR had requested and helped arrange for it to be sent from an official government email account to an email account affiliated with DEL ENTERTAINMENT.

On or about April 27, 2018, after DEL VILLAR's associates, including SCALISI, helped purchase a private charter flight for Artist A to travel from Van Nuys, California, to Aguascalientes,

8

Mexico, Artist A traveled from Van Nuys to Aguascalientes and, at the behest of defendant, DEL ENTERTAINMENT, and DEL VILLAR, performed a concert early in the morning of April 28, 2018.

The total amount paid in exchange for Artist A's performance at the concert in Aguascalientes, Mexico was approximately 2,000,000 Mexican pesos, shared between defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A.

Following the Aguascalientes concert, defendant continued to sell dates for artists represented by DEL ENTERTAINMENT and by defendant (primarily Artist A) for concerts that were to be performed in Mexico. Defendant and DEL VILLAR/DEL ENTERTAINMENT had a financial interest in these concerts, as discussed below, and DEL VILLAR attempted to hide defendant's involvement and/or financial interest in the concerts. At some point, DEL VILLAR informed an associate of defendant that, going forward, DEL VILLAR would refer to defendant by the moniker "Pedro" in order to conceal defendant's involvement and joint financial interest in such concerts. Payment for such concerts varied: typically, though not always, defendant's associate would receive Mexican pesos from the businessperson(s) who put on the concert, from which defendant would cause payment to be distributed to DEL VILLAR (via an associate) and Artist A (via an associate); in certain instances, at defendant's direction, the businessperson(s) organizing the concert would have advance deposits of Mexican pesos made to an account in the name of Del Melodia, which was controlled by DEL ENTERTAINMENT.

Following defendant's OFAC designation, in addition to the Aguascalientes concert discussed above, defendant, DEL VILLAR, DEL ENTERTAINMENT, and others engaged in additional transactions,

including but not limited to the concerts discussed in Appendix A, all in violation of the Kingpin Act. Specifically, defendant sold dates for Artist A and others represented by DEL ENTERTAINMENT to perform at additional concerts in Mexico. DEL VILLAR, acting on behalf of and for the benefit of DEL ENTERTAINMENT, was aware of and agreed to such concerts, and both defendant and DEL VILLAR/DEL ENTERTAINMENT profited from such concerts, as discussed further in Appendix A. In sum, the total amount paid for concerts in which defendant and DEL VILLAR/DEL ENTERTAINMENT had a financial interest following defendant's OFAC designation was in excess of $1,500,000 (United States dollars – after conversion from Mexican pesos).

SENTENCING FACTORS

10. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

//

//

//

11.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level [Value of | 6 | [U.S.S.G. § 2S1.3(a)(2), |
| funds more than $1,500,000]: | +16 | 2B1.1(b)(1)(I)] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 19 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 22 below, defendant and the USAO agree not to seek that any other specific offense characteristics or adjustments relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

12.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).  By way of example, but not limitation, the USAO agrees to recommend a downward variance equivalent to three offense levels at the time of sentencing as set forth in paragraph 3.d.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14.    Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

15.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

16.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 37 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

17.   The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above, the
USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

18.   Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then the USAO will be relieved of all of its obligations
under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

19.   This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

20.   Defendant agrees that if defendant, at any time after the
signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously

1  entered a guilty plea pursuant to this agreement, defendant will not

2  be able to withdraw the guilty plea, and (b) the USAO will be

3  relieved of all its obligations under this agreement.

4  <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

5  <u>OFFICE NOT PARTIES</u>

6      21.  Defendant understands that the Court and the United States

7  Probation and Pretrial Services Office are not parties to this

8  agreement and need not accept any of the USAO's sentencing

9  recommendations or the parties' agreements to facts or sentencing

10 factors.

11     22.  Defendant understands that both defendant and the USAO are

12 free to: (a) supplement the facts by supplying relevant information

13 to the United States Probation and Pretrial Services Office and the

14 Court, (b) correct any and all factual misstatements relating to the

15 Court's Sentencing Guidelines calculations and determination of

16 sentence, and (c) argue on appeal and collateral review that the

17 Court's Sentencing Guidelines calculations and the sentence it

18 chooses to impose are not error, although each party agrees to

19 maintain its view that the calculations in paragraph 11 are

20 consistent with the facts of this case.  While this paragraph permits

21 both the USAO and defendant to submit full and complete factual

22 information to the United States Probation and Pretrial Services

23 Office and the Court, even if that factual information may be viewed

24 as inconsistent with the facts agreed to in this agreement, this

25 paragraph does not affect defendant's and the USAO's obligations not

26 to contest the facts agreed to in this agreement.

27     23.  Defendant understands that even if the Court ignores any

28 sentencing recommendation, finds facts or reaches conclusions

different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

    24.   Defendant understands that, except as set forth herein or in any contemporaneously signed and field addenda or supplements, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into, unless in a writing signed by all parties or on the record in court.

//

//

//

1

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      25.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   E. MARTIN ESTRADA
    United States Attorney

9

10                                                    3/24/2023
    _____       _____
11  BENEDETTO L. BALDING              Date
    Assistant United States Attorney

12                                    3/15/23
    _____       _____
13  JESUS PEREZ ALVEAR                Date
    Defendant

14                                    3/15/23
    _____       _____
15  DEVIN BURSTEIN                    Date
    Attorney for Defendant
16  JESUS PEREZ ALVEAR

17

18

19                      CERTIFICATION OF DEFENDANT

20      This agreement has been read to me in Spanish, the language I

21  understand best.  I have had enough time to review and consider this

22  agreement, and I have carefully and thoroughly discussed every part

23  of it with my attorney.  I understand the terms of this agreement,

24  and I voluntarily agree to those terms.  I have discussed the

25  evidence with my attorney, and my attorney has advised me of my

26  rights, of possible pretrial motions that might be filed, of possible

27  defenses that might be asserted either prior to or at trial, of the

28  sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant

                                    17

1   Sentencing Guidelines provisions, and of the consequences of entering

2   into this agreement.  No promises, inducements, or representations of

3   any kind have been made to me other than those contained in this

4   agreement or in an agreement signed by all parties or on the record

5   in open court.  No one has threatened or forced me in any way to

6   enter into this agreement.  I am satisfied with the representation of

7   my attorney in this matter, and I am pleading guilty because I am

8   guilty of the charge and wish to take advantage of the promises set

9   forth in this agreement, and not for any other reason.

10  _____          3/15/23

11  JESUS PEREZ ALVEAR                           Date
    Defendant

12

13

14              CERTIFICATION OF INTERPRETER

15       I, ESTEBAN HERNANDEZ , am fluent in the written and spoken

16  English and Spanish languages.  I accurately translated this entire

17  agreement from English into Spanish to defendant Jesus Perez Alvear

18  on this date.

19  _____          3/15/23

20  INTERPRETER                                  Date

21

22

23           CERTIFICATION OF DEFENDANT'S ATTORNEY

24       I am Jesus Perez Alvear's attorney.  I have carefully and

25  thoroughly discussed every part of this agreement with my client.

26  Further, I have fully advised my client of his rights, of possible

27  pretrial motions that might be filed, of possible defenses that might

28  be asserted either prior to or at trial, of the sentencing factors

                           18

1  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

2  provisions, and of the consequences of entering into this agreement.

3  To my knowledge: no promises, inducements, or representations of any

4  kind have been made to my client other than those contained in this

5  agreement; no one has threatened or forced my client in any way to

6  enter into this agreement or in an agreement signed by all parties or

7  on the record in open court; my client's decision to enter into this

8  agreement is informed and voluntary; and the factual basis set forth

9  in this agreement is sufficient to support my client's entry of a

10 guilty plea pursuant to this agreement.

11

                                                3/15/23
12 DEVIN BURSTEIN                               Date
   Attorney for Defendant
13 JESUS PEREZ ALVEAR

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX A – ADDITIONAL CONCERTS

1.    Prior to April 29, 2018, defendant sold a date for Artist A to perform at a concert in Jalpa, Queretaro, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about April 29, 2018, Artist A performed at a concert in Jalpa, Queretaro, Mexico. Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for Artist A's performance at the concert in Jalpa, Queretaro.

2.    Prior to May 11, 2018, defendant sold a date for Artist A to perform at a concert in Penjamo, Guanajuato, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about May 11, 2018, Artist A performed at a concert in Penjamo, Guanajuato, Mexico. Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Penjamo, Guanajuato.

3.    Prior to May 12, 2018, defendant sold a date for Artist A to perform at a concert in Nueva Leon, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about May 12, 2018, Artist A performed at a concert in Nueva Leon, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Nueva Leon.

4.    Prior to May 13, 2018, defendant sold a date for Artist A to perform at a concert in Hermosillo, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about May 13, 2018, Artist A performed at a concert in Hermosillo, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Hermosillo.

5.    Prior to May 19, 2018, defendant sold a date for Artist A to perform at a concert in Escarcega, Campeche, Mexico, with the

A-1

knowledge of and at the behest of DEL VILLAR.  On or about May 19, 2018, Artist A performed at a concert in Escarcega, Campeche, Mexico. Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Escarcega, Campeche.

6.    Prior to September 28, 2018, defendant sold a date for Artist A to perform at a concert in Mexicali, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about September 28, 2018, Artist A performed at a concert in Mexicali, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Mexicali.

7.    Prior to September 29, 2018, defendant sold a date for Artist A to perform at a concert in Pachuca, Hidalgo, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about September 29, 2018, Artist A performed at a concert in Pachuca, Hidalgo, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Pachuca, Hidalgo.

8.    Prior to October 20, 2018, defendant sold a date for Artist A to perform at a concert in Salamanca, Guanajuato, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about October 20, 2018, Artist A performed at a concert in Salamanca, Guanajuato, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Salamanca, Guanajuato.

9.    Prior to November 17, 2018, defendant sold a date for Artist A to perform at a concert in Tlaxcala, Mexico, with the knowledge of and at the behest of DEL VILLAR.  On or about November 17, 2018, Artist A performed at a concert in Tlaxcala,

1   Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared
2   the fee paid in exchange for the concert in Tlaxcala.

3        10.  Prior to November 30, 2018, defendant sold a date for
4   Artist A to perform at a concert in Culiacan, Sinaloa, Mexico, with
5   the knowledge of and at the behest of DEL VILLAR.  On or about
6   November 30, 2018, Artist A performed at a concert in Culiacan,
7   Sinaloa, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist
8   A shared the fee paid in exchange for the concert in Culiacan,
9   Sinaloa.

10        11.  Prior to December 1, 2018, defendant sold a date for Artist
11  A to perform at a concert in Texcoco, Mexico, with the knowledge of
12  and at the behest of DEL VILLAR.  On or about December 1, 2018,
13  Artist A performed at a concert in Texcoco, Mexico.  Defendant, DEL
14  VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in
15  exchange for the concert in Texcoco.

16        12.  Prior to December 8, 2018, defendant sold a date for Artist
17  A to perform at a concert in Morelia, Mexico, with the knowledge of
18  and at the behest of DEL VILLAR.  On or about December 8, 2018,
19  Artist A performed at a concert in Morelia, Mexico.  Defendant, DEL
20  VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in
21  exchange for the concert in Morelia.

22        13.  Prior to December 15, 2018, defendant sold a date for
23  Artist A to perform at a concert in Huimilpan, Hidalgo, Mexico, with
24  the knowledge of and at the behest of DEL VILLAR.  On or about
25  December 15, 2018, Artist A performed at a concert in Huimilpan,
26  Hidalgo, Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist
27
28

A shared the fee paid in exchange for the concert in Huimilpan, Hidalgo.

14.   Prior to December 21, 2018, defendant sold a date for Artist A to perform at a concert in Uriangato, Mexico, with the knowledge of and at the behest of DEL VILLAR.   On or about December 21, 2018, Artist A performed at a concert in Uriangato, Mexico.   Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Uriangato.

15.   Prior to December 23, 2018, defendant sold a date for Artist A to perform at a concert in Celaya, Guanajuato, Mexico, with the knowledge of and at the behest of DEL VILLAR.   On or about December 23, 2018, Artist A performed at a concert in Celaya, Guanajuato, Mexico.   Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared the fee paid in exchange for the concert in Celaya, Guanajuato.

16.   Prior to January 13, 2019, defendant sold a date for Artist A and another artist represented by DEL ENTERTAINMENT ("Artist B") to perform at a concert in Guerrero, Chilpancingo, Mexico, with the knowledge of and at the behest of DEL VILLAR.   On or about January 13, 2019, Artist A and Artist B performed at a concert in Guerrero, Chilpancingo, Mexico.   Defendant, DEL VILLAR/DEL ENTERTAINMENT, Artist A, and Artist B shared the fee paid in exchange for the concert in Guerrero, Chilpancingo.

17.   Prior to January 19, 2019, defendant sold a date for Artist A to perform at a concert in Arcelia, Guerrero, Mexico, with the knowledge of and at the behest of DEL VILLAR.   On or about January 19, 2019, Artist A performed at a concert in Arcelia, Guerrero,

1  Mexico.  Defendant, DEL VILLAR/DEL ENTERTAINMENT, and Artist A shared
2  the fee paid in exchange for the concert in Arcelia.

3      18.  Prior to February 2, 2019, defendant sold a date for Artist
4  A to perform at a concert in San Jose Iturbide, Guanajuato, Mexico,
5  with the knowledge of and at the behest of DEL VILLAR.  On or about
6  February 2, 2019, Artist A performed at a concert in San Jose
7  Iturbide, Guanajuato, Mexico.  Defendant, DEL VILLAR/DEL
8  ENTERTAINMENT, and Artist A shared the fee paid in exchange for the
9  concert in San Jose Iturbide, Guanajuato.

10     19.  Prior to March 30, 2019, defendant sold a date for Artist A
11 to perform at a concert in Texcoco, Mexico, with the knowledge of and
12 at the behest of DEL VILLAR.  On or about March 30, 2019, Artist A
13 performed at a concert in Texcoco, Mexico.  Defendant, DEL VILLAR/DEL
14 ENTERTAINMENT, and Artist A shared the fee paid in exchange for the
15 concert in Texcoco.

16
17
18
19
20
21
22
23
24
25
26
27
28